AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| | |
|---|---|
| United States of America<br>v.<br>Canxuan Zhuang<br><br>*Defendant(s)* | Case No.<br>20-MJ-2015 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ in the county of _____ in the _____ District of ___New Jersey___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 371 | Conspiracy to export and attempt to export U.S.-origin defense articles, such as night vision devices from the United States to the PRC without first obtaining from the Department of State, Directorate of Defense Trade Controls, a license or written authorization for such export, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 123.<br>See Attachment A |

This criminal complaint is based on these facts:

See Attachment B

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Travis A. Nissley, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __02/27/2020__

_____
*Judge's signature*

City and state: ___Camden, New Jersey___    Joel Schneider, U.S. Magistrate
*Printed name and title*

## **Attachment A**

From in or about October 2019 and February 27, 2020, in Camden County, in the District of New Jersey, the defendant,

Canxuan Zhuang,

did knowingly and intentionally conspire and agree with others, known and unknown, to export and attempt to export U.S.-origin defense articles, such as night vision devices, including but not limited to, AN/PVS-15 Mil Spec Night Vision Binoculars with image intensifier tubes, from the United States to the People's Republic China without first obtaining from the Department of State, Directorate of Defense Trade Controls, a license or written authorization for such export, contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 121.1, 123.1 and 127.1.

In violation of Title 18, United States Code, Sections 371.

## ATTACHMENT B

## COMPLAINT AFFIDAVIT

I, Travis A. Nissley, Special Agent with the Federal Bureau of Investigation ("FBI"), have knowledge of the following facts based on my own investigation and upon conversations with other individuals involved in this investigation. I have not included all of the facts known to me in this Affidavit, just those facts which I believe necessary to establish probable cause. Where the contents of statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event occurred on a particular date, I am asserting the event occurred on or about the date alleged:

1. Based on my training and experience as a Special Agent with the FBI, the training and experience of the Homeland Security Investigation ("HIS") Special Agent with whom I am working, and the facts set forth in this affidavit, there is probable cause to believe that the defendant Canxuan Zhuang, together with others, knowingly, intentionally and willfully exported, attempted to export, and conspired to export, from the United States to the People's Republic of China ("PRC") items on the United States Munitions List ("USML"), that was night vision products ("NVP"), also referred to as night vision devices ("NVD"), night optical/observation devices ("NOD") and night vision goggles ("NVG"), without the required U.S. Department of State license, in violation of the Arms Export Control Act, Title 22, United States Code, Section 2778, in violation of Title 18, United States Code, Section 371.

2. Defendant Canxuan Zhuang, is a native and citizen of the People's Republic of China. He entered the United States on July 17, 2018 as a B1/B2 visa.[1]

**Statutory Background**

3. The export of defense articles and services from the United States is governed by the Arms Export Control Act ("AECA"), Title 22, United States Code, Section 2778, and the International Traffic in Arms Regulations ("ITAR"), Title 22, Code of Federal Regulations, Sections 120-130.

4. The AECA authorized the President, among other things, to control the export of "defense articles" deemed critical to the national security and foreign policy interests of the United States. Unless a specific exception applied, the Act provides that no defense articles or defense services may be exported without a license for such export. 22 U.S.C. § 2778(b). By executive order, the President has delegated this authority to the United States Department of

---

[1] A B-1/B-2 visa is non-immigrant visa which allows a foreign national to enter the United States for a temporary period of time and for a specific purpose. A B-1 is a Business Visitor and a B-2 is a Visitor for Pleasure (Tourist).

1

State, Directorate of Defense Trade Controls ("DDTC"). Accordingly, the DDTC promulgates regulations under the AECA, which are known as the ITAR.

5.  The ITAR implements the provisions of the AECA, and establishes the framework for regulating the export of defense articles. The ITAR defines an "export" as the sending or taking of a defense article out of the United States in any manner. The ITAR defines a "defense article" to be any item on the United States Munitions List ("USML"). The ITAR contains the USML.

6.  The USML sets forth 21 categories of defense articles and services that are subject to export licensing controls. Included in this list are such things as military aircraft, helicopters, artillery, shells, missiles, rockets, bombs, vessels of war, explosives, military and space electronics, certain types of optical equipment, guns, ammunition, firearms, close assault weapons, combat shotguns, and components of such firearms and weapons. Category XII on the USML designates as defense articles: image intensification and other night sighting equipment or systems specifically designed, modified or configured for military use; second generation and above military image intensification tubes specifically designed, developed, modified, or configured for military use; and infrared, visible and ultraviolet devices specifically designed, developed, modified, or configured for military application.

7.  Persons desiring to export defense articles and services specified on the USML from the United States must first obtain a license from the DDTC for each defense article prior to the export, as set forth in Title 22, Code of Federal Regulations, Sections 122 and 123. It is illegal to export or attempt to export defense articles without a license.

**Probable Cause**

8.  Before November 6, 2019, Company 1, a NVP company located in Georgia, shipped via Federal Express one AN/PVS-15 Mil Spec Night Vision Binocular with green phosphor intensifier tubes (hereinafter NVG) to an address in southern New Jersey.

9.  Company 1 was paid $8,060 through a bank wire transfer from a bank in New Jersey.

10.  A review of Company 1's records related to that purchase reveal that Company 1 received an email request on October 24, 2019 to purchase AN/PVS-15 Mil Spec Night Vision Binocular with L3 MIL SPEC ITT III Pinnacle 10160A(non-gated) green phosphor intensifier tubes. Company 1 also received a copy of a New Jersey Driver's License and an ITAR form indicating that buyer (hereinafter "New Jersey buyer") was a "naturalized citizen of the United States."

11.  According to a record check of the name and date of birth with the Department of Homeland Security, Immigration and Customs Enforcement, the New Jersey buyer listed on the

2

ITAR form was not a naturalized United States Citizen. The New Jersey buyer was a citizen of the PRC who was a lawful permanent resident.

12. On November 12, 2019, FBI and HSI agents observed the New Jersey buyer take the NVG to a U.S. Post Office in Williamstown, New Jersey and ship it to an address in California. Law enforcement officers were able to see the shipping label. Law enforcement researched the address and determined that it was associated with a transshipment company.

13. On November 14, 2019, HSI agents went to the address in California that the NVG was sent to and determined that it was a transshipment company. HSI agents served a Customs subpoena on the transshipper. HSI agents seized the package containing the NVG and collected paperwork from the transshipper regarding the intended recipient of the package. The information provided by the transshipper showed that the ultimate recipient of the NVG was an individual in the PRC.

14. In February 2020, HSI returned the AN/PVS-15 night vision goggles to the New Jersey buyer.

15. On February 24, 2020, law enforcement observed the New Jersey buyer meet with Canxuan Zhuang, in the parking lot of a Walmart in Cherry Hill, New Jersey. Present at the meeting was an undercover law enforcement officer. During the meeting, the New Jersey buyer told Canxuan Zhuang that the New Jersey buyer did not have the NVG in the New Jersey buyer's possession at the time.[2] When the New Jersey buyer informed Canxuan Zhuang that the buyer did not have the night vision binoculars with the New Jersey buyer because they were a very expensive military item, Canxuan Zhuang became angry, telling the New Jersey buyer that the New Jersey buyer had wasted his time. Canxuan Zhuang told the New Jersey buyer that he could pick up the item on that day and that the buyer had confirmed with "the guy." The New Jersey buyer apologized and informed Canxuan Zhuang that "it is illegal to ship this stuff over there we don't want to get in trouble." Canxuan Zhuang asked "can we pick it up now?" Canxuan Zhuang also referenced talking to a guy in China. Canxuan Zhuang advised that he intended to ship the NVG out of northeast Philadelphia that day with other packages to China and that they would get to China in three or four weeks. Zhuang also mentioned that this had been dragging on since October.

16. Physical surveillance of Zhuang after he departed the Walmart parking lot revealed he traveled to Chinatown in Philadelphia and parked his Audi Q5. Boxes were observed in the vehicle. Later, before Zhuang and another male departed in the Audi Q5, more boxes were loaded into the vehicle.

---

[2] The conversation was in both Cantonese and English and law enforcement used a FBI linguist fluent in Cantonese to listen to the meeting.

17. On February 27, 2020, law enforcement observed the New Jersey buyer meet with Canxuan Zhuang at a location in Lower Merion, Pennsylvania near Canxuan Zhuang's residence. Law enforcement used surveillance equipment to monitor the meeting. During a brief conversation, Canxuan Zhuang told the New Jersey buyer that he was going to ship the NVG to China in a few days, that they should be in China in two or three weeks and that the person in China was paying Canxuan Zhuang. The New Jersey buyer then gave Canxuan Zhuang the NVG. Zhuang then proceeded to walk away and law enforcement officers stopped him and retrieved the NVG.

18. In according with 22 U.S.C. §§ 2778-2780 of the AECA, the DDTC made an initial determination that the AN/PVS-15 Mil Spec Night Vision Binocular with L3 MIL SPEC ITT III Pinnacle 10160 is controlled on the USML under Category XII (e)(23)(iii). Therefore, a license from DDTC is required to legally export this item from the United States.

19. According to a DDTC representative, Canxuan Zhuang, as a foreign national, and would not be eligible for a license to export ITAR controlled items.

4